# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:09-0102 |
| | | CIVIL NO. 6:12-0323 |
| VERSUS | * | JUDGE HAIK |
| STEPHEN LACOMBE | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Stephen Lacombe.  [rec. doc. 43].  The Government has filed an Answer and Memorandum in Support, to which petitioner has filed a Reply. [rec. docs. 48 and 49].   For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.  Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

On May 13, 2009, petitioner was indicted for two counts of attempting to entice a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2422(b).  The charged crimes were alleged to have been committed on February 23, 2009 and March 4, 2009, respectively.   [rec. doc. 1].

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir. 1989).

On October 13, 2009, Lacombe pled guilty to a one count bill of information charging the defendant with attempting to receive child pornography on February 23, 2009 in violation of 10 U.S.C. § 2252A(a)(2)(A) and (b)(1). [rec. doc. 32 and 33].

In his plea agreement, Lacombe was advised of that the maximum statutory penalty for the crime was twenty years imprisonment and that the crime carried a minimum term of five years imprisonment.  Lacombe was further advised that the sentencing would be governed by the Sentencing Reform Act as modified by *Booker*, and that a final determination of the applicable guidelines range would not be made until after the completion of the pre-sentence investigation.  However, the sentencing judge alone would decide what sentence to impose. [rec. doc. 35, ¶ 1, 8 and 9].

A pre-sentence investigation report ("PSI") was prepared by the United States Probation Office, which found the defendant's advisory sentencing guidelines range to be sixty to sixty-three months imprisonment. [rec. doc. 42].

Petitioner appeared for sentencing on February 2, 2011 accompanied by counsel. At that time, the court asked "Does the defendant have anything to say or offer in mitigation of punishment before sentence is imposed?" [rec. doc. 47, pg. 5].  Defense counsel answered stating "With respect to Mr. Lacombe, he and I have discussed the matter and he just didn't feel comfortable or confident to say anything, so he asked if I would say something.  So I do have a couple of things to bring to the court's attention." [*Id*.].  Petitioner voiced no objection to counsel's statement.

Thereafter, counsel addressed the court arguing that Lacombe be sentenced within the guidelines range.  Counsel noted that although Lacombe's crime was serious, no

minors were involved as Lacombe had been conversing with law enforcement personnel. [*Id.* at 5].  Further counsel stated that he had met with Lacombe and his wife and believed that Lacombe had come to "the realization of the harm that he has done. . . ." [*Id.* at 6].

Counsel also advised that this was Lacombe's first criminal offense and that he had never previously been arrested or had criminal charges against him. [*Id.* at 5-6]. Furthermore, counsel noted that Lacombe had been a "model defendant" during his pre-trial supervised release, never having any incidents of non-compliance or bad conduct reported. [*Id.* at 9].

Counsel also advised that Lacombe had always been "properly and productively" engaged in his employment, his community and his family, and directed the court to letters submitted to the court on Lacombe's behalf from Lacombe's family and friends. [*Id* at 9 and 5].

At the conclusion of counsel's presentation, the court again addressed Lacombe to verify that Lacombe did not wish to speak on his own behalf asking "You have nothing to say, Mr. Lacombe?"  Lacombe expressly responded "No. sir, Your Honor." [*Id.* at 9].

Thereafter, petitioner was sentenced to serve 72 months imprisonment, followed by a fifteen year term of supervised release. [sent. tr. pg. 10-11].  The court explained the upward departure from the guidelines range as follows:

> The reason the court has gone above the high end of the sentencing guidelines is quite simple.  When you look at this particular case and look at this situation, I think the defendant was very fortunate to be able to plead guilty to this particular offense, and I do not think that the - - these guidelines adequately reflect the seriousness of the offense committed by

this defendant.  This court further believes that this defendant is in need of more adequate deterrence of criminal conduct to protect the public from further crimes of the defendant.  Hopefully this defendant will get some needed educational training or medical treatment or other corrective treatment while he is incarcerated.

This court further believes that to sentence this defendant within the sentencing guidelines would be an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct . . . .

[*Id*. at 10-11].

Defense counsel objected to the court's sentence which was outside the guidelines range. [*Id*. at 14].  Judgment was entered on February 3, 2011.  [rec. doc. 40].  Lacombe did not directly appeal his conviction or sentence.

Lacombe filed the instant Motion on January 30, 2012.  Petitioner argues a single claim for relief, that although he was given the opportunity to speak in mitigation of his sentence before sentencing, he was unable to do so because he was "very distraught".  Accordingly, he requests that his sentence be vacated and that he be allowed to give a "proper" allocution wherein he will request the court to consider various mitigating circumstances, including that he served nineteen months of home confinement prior to sentencing, and re-sentence him to the mandatory minimum sentence of sixty months imprisonment.  [rec. doc. 43].

The government argues that petitioner's claim is not cognizable in this § 2255 proceeding, that the claim is procedurally barred due to his failure to raise the claim on direct appeal and his failure to demonstrate cause for his default, and that in any event,

4

the defendant waived his right to allocute and therefore relief must be denied.  For the reasons which follow, the undersigned finds that the government's arguments are well taken.

## LAW AND ANALYSIS

### Scope of Review under § 2255 and Procedural Default

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.  Section 2255 provides four grounds for relief:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow.  The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal."  *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982).  Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164.  As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude.  *Cervantes,* 132 F.3d at 1109;

*Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).

However, those issues may not be raised for the first time on collateral review without a

showing of both cause for the procedural default and actual prejudice resulting from the

error.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at

166.[2]

_____Other types of error may not be raised under § 2255 unless the defendant

demonstrates that the error could not have been raised on direct appeal and, if condoned,

would result in a complete miscarriage of justice.  *Cervantes*, 132 F.3d at 1109 *citing*

*United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113

S.Ct. 621, 121 L.Ed.2d 554 (1992).

In *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417, the Supreme

Court was presented with the question whether a collateral attack under § 2255 could be

predicated on a violation of the defendant's the right to make a statement on his own

behalf before he is sentenced as required by Federal Rule of Criminal Procedure 32(a) in

the absence of aggravating circumstances. The Court found the claim not cognizable

stating: "The failure of a trial court to ask a defendant represented by an attorney whether

he has anything to say before sentence is imposed is not of itself an error of the character

or magnitude cognizable under a writ of *habeas corpus*. It is an error which is neither

---

[2]A departure from the cause and actual prejudice test might be warranted in cases "in which a
constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Shaid*,
937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986).  Lacombe does not
contest his actual guilt, thus this exception is inapplicable here.

jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure . . . ." *Hill*, 368 U.S. at 428[3]; *see also United States v. Timmreck*, 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) applying the reasoning in *Hill* to find that a violation of Federal Rule of Criminal Procedure 11 is likewise not cognizable on § 2255 Motion); *United States v. Reyna*, 358 F.3d 344, 349 (5th Cir. 2004) *citing Hill*, *supra*.( a "violation of a defendant's right to allocution [is] not a predicate for *habeas corpus* relief absent aggravating circumstances.").[4]

_____In light of the above, it is clear that Lacombe's claim is of neither constitutional nor jurisdictional magnitude.  Furthermore, even if the claim could be construed as either constitutional or jurisdictional, the claim may not be considered here because Lacombe did not raise the issue on direct appeal and he has not established cause or actual prejudice to excuse this failure.

Lacombe argues that his emotional distress which prevented him from speaking at sentencing constitutes cause.  However, the Supreme Court has explained that cause requires an "objective factor external to the defense."  *Murray,* 477 U.S. at 488.  Clearly,

---

[3]The *Hill* case distinguished the appropriate remedy for a violation of Rule 32 on *direct appeal* in a footnote, citing the remedy set forth in *Van Hook v. United States*, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961) as applicable in such cases. *Hill, 368 U.S. at 429 fn. 6.  Van Hook* is a one sentence opinion that cites *Green v. United States*, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) as requiring reversal and remand of the defendant's case for re-sentencing when a violation of Rule 32 occurs.

[4]As set forth below, Lacombe points to no aggravating circumstances that would entitle him to *habeas corpus* relief.

Lacombe's *subjective* emotional state at sentencing is not an objective impediment external to the defense.  Moreover, like Lacombe, all defendants facing sentencing are emotional.  Thus, even if the term could be construed as petitioner suggests, every defendant sentenced would be able to point to his subjective emotional state as constituting cause.  This is clearly not cause as contemplated by the Supreme Court.  Because Lacombe fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Moreover, this non-constitutional and non-jurisdictional claim cannot be considered because Lacombe has not demonstrated that he could not have raised the claim on direct appeal and, even if this showing had been made, Lacombe cannot establish that the claim would result in a complete miscarriage of justice if not considered.  Under *Hill*, a mere technical violation of the right to allocute is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure . . . ." *Hill*, 368 U.S. at 428.

For these reasons, Lacombe's claim is both procedurally barred and not cognizable in this § 2255 proceeding.

**Merits**

Finally, as noted by the government, Lacombe was personally addressed by the court and, on two occasions, was given the specific, unequivocal opportunity to speak on his own behalf in mitigation of his sentence.  However, Lacombe declined the court's offer of the opportunity to allocute.

Contrary to Lacombe's position, there is no requirement that the court explain the possible benefit of availing oneself of the opportunity to allocute.  Rule 32 doesn't require any magical words or formalities, it merely requires that the defendant be issued a "personal invitation to speak prior to sentencing." *United States v. Hernandez,* 291 F.3d 313, 315 (5th Cir. 2002) *citing United States v. Washington*, 44 F.3d 1271, 1276 (5th Cir. 1995); Green v. United States, 365 U.S. 301, 3-4-305, 81 S.Ct. 653, 655 (1961) ("there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. . .  trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing").

Here, there is no doubt that the court extended to Lacombe a comprehensive, easily understood invitation to say anything he wished and to offer anything he desired in mitigation of punishment before his sentence was imposed.  Indeed, Lacombe admits that he "was given the opportunity to speak", but claims that he was "entirely unable at the time." [rec. doc. 43-1, pg. 2].  For whatever reason, the fact remains that Lacombe failed, or by his silence declined, to avail himself of the opportunity, instead allowing counsel to make a presentation to the court.  Further, while it is "unnecessary for a court to renew its invitation for allocution,"[5] after counsel made a presentation to the court, without any objection from Lacombe, the court nevertheless reiterated its invitation to Lacombe to

---

[5]*See Hernandez,* 291 F.3d at 316; *Washington*, 44 F.3d at 1277.

speak on his own behalf.  At that time, Lacombe himself expressly and unequivocally declined the court's invitation to speak or present anything in mitigation of his sentence. Lacombe therefore waived his right to allocute.  *See Washington*, 44 F.3d at 1276-1277. Relief under § 2255 is not available "because a defendant waives the opportunity to allocute and later regrets that decision." *United States v. Smith*, 2010 WL 3942884, *12 (E.D. La. 2010).

Finally, even assuming that Lacombe's right to allocution had been denied, which it clearly was not in this case, Lacombe points to no aggravating circumstances that would entitle him to *habeas corpus* relief on these grounds.  Possible examples of aggravating circumstances given by the *Hill* Court were where a defendant was affirmatively denied an opportunity to speak, or where the court was misinformed or uninformed as to relevant circumstances.  *Hill*, 368 U.S. at 429.

Within the instant Motion, Lacombe submits his "personal statement" which he would present "in lieu of allocution." [rec. doc. 43-1, pg. 3].  To the extent that this statement may be construed as an argument that the court was uninformed as to relevant circumstances, that claim has no merit.  The facts and assertions Lacombe contends he would have presented to mitigate his sentence were either considered by the court and deemed unpersuasive, or do not undermine the court's reasons for imposing sentence. See *United States v. Legg*, 439 Fed. Appx. 312, 313 (5th Cir. 2011) (on direct appeal, declining to remand for re-sentencing because the defendant had failed to demonstrate that the error in allowing proper allocution caused the defendant any prejudice).

As noted by the government, Lacombe's "personal statement" contains the same facts noted by counsel at sentencing, augmented by events which have occurred after sentencing, and also contains facts which were previously presented to the court in the pre-sentence investigation and letters received from family and friends.  Hence, Lacombe offers nothing which warrants re-sentencing, even if the claim been raised on direct appeal.

More specifically, as noted by counsel, Lacombe requests that the court consider the letters sent to the court by friends and family. Notably, these letters are filed under seal in the record of these proceedings, and hence, were considered at sentencing. [rec. docs. 37 and 38].  Like counsel, Lacombe notes that he had been a productive member of society and a valuable addition to the community.  Lacombe likewise notes, as did his counsel, that he had never before been "in trouble with the law" and that he had completed nineteen months of home confinement without incident.

Lacombe also states that he needs to "help his wife with finances" and that his youngest daughter "needs [him] back in her life" and his "presence and guidance."  While counsel did not expressly state those facts to the court, the defendant's marital, familial and financial status were presented to the court in the Pre-Sentence Investigation Report, as were the difficulties that Lacombe's youngest daughter was facing as a result of Lacombe's criminal conduct. [rec. doc. 42, ¶ 39, 41, 57-65].  Moreover, the court received and considered a letter received from Lacombe's youngest daughter, outlining the positive role Lacombe played in her life, as well as a letter from Lacombe's wife. [rec. doc. 38, pg. 3; rec. doc. 37, pg. 4-5].

The remainder of the "personal statement" deals with events occurring after sentencing, which could not therefore have been previously considered by the court. These facts include Lacombe's mother being diagnosed with leukemia and his father's deteriorating knees and health.

The sole "new" circumstance contained in the "personal statement" that may have been considered by the court during Lacombe's sentencing is that Lacombe now claims that he needs to help take car of his ninety-three year old grandmother's property. However, this "new" fact  clearly would not have swayed the court to impose a lesser sentence, given the court's express reasoning for imposing seventy-two months imprisonment – the fact that the Lacombe had benefitted from the government's agreement to allow him to plead to a lesser offense, the fact that the guidelines did not adequately reflect the seriousness of the offense actually committed by Lacombe, the court's belief that a lesser sentence would therefore constitute an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct, and the court's belief that Lacombe is in need of more adequate deterrence to protect the public from further crimes.

## CONCLUSION

For the foregoing reasons,  **IT IS RECOMMENDED** that Stephen Lacombe's Motion to Correct Illegal Sentence filed pursuant to Title 28 U.S.C. § 2255 be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the**

13

**time of filing.**

Signed at Lafayette, Louisiana, April 3, 2012.


C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

```
Copy sent:  RTH
On:  4-3-2012
By:  MBD
```

14